IN THE UNITED STATES DITRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT ROANOKE, ABINGDON DIVISION

| | |
|---|---|
| CAROLYN STOOTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| CAVALRY PORTFOLIO SERVICES, LLC ) | |
| CAVALRY SPV I, LLC ) | |
| LOUIS DARDIGNAC and ) | JURY TRIAL DEMANDED |
| KRAMER, LINKIE & TAYLOR, LLC, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

### JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

2. This action arises out of Defendants' numerous and repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. (hereinafter referred to as "FDCPA"), in their illegal efforts to collect a consumer debt from Plaintiff.

3. Venue is proper in this District because the acts and transactions occurred here and the Plaintiff resides here.

### PARTIES

4. Plaintiff Carolyn Stoots (hereinafter "Plaintiff") is a natural person who resides in Washington County, Virginia, and a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5. Defendant Cavalry Portfolio Services, and Defendant Cavalry SPV I, LLC (hereinafter referred to collectively as "Cavalry") are "debt collector[s]" as that term is defined by 15 U.S.C. § 1692a(6) and for-profit corporations and may be served through its registered agent as follows:. CT Corporation System, 4701 Cox Road, Suite 301, Glen Allen, VA 23060.

6. Defendant Kramer, Linkie & Taylor, LLC, (hereinafter "Defendant Kramer") is a law firm and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and may be served through its registered agent as follows: CT Corporation System, 4701 Cox Road, Suite 301, Glen Allen, VA 23060.

7. Defendant Kramer is hired by and assists Defendant Cavalry in collecting its debts and in filing State Court lawsuits against consumers. Defendant Kramer is an agent of Defendant Cavalry.

8. Defendant Louis Dardignac (hereinafter "Defendant Dardignac") is a natural person and is employed by Defendant Cavalry as a Legal Administrator and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6), and may be served at her business address: Cavalry Credit Management, 16 Mcleland Road, Suite 101, St. Cloud, MN 56303.

9. Defendant Cavalry, Defendant Kramer and Defendant Dardignac may at times be referred to, collectively, as "the Defendants."

## FACTUAL ALLEGATIONS

10. Defendant Cavalry is engaged in the business of purchasing charged-off consumer debts and attempting to collect them from consumers.

11. Defendant Cavalry pays pennies on the dollar for the debts it purchases.

12. Defendant Cavalry makes a business decision not to obtain a copy of the written contracts signed by consumers or other evidence of the alleged debt when purchasing charged-off consumer debts or prior to filing State court collection lawsuits against consumers.

13. Defendant Cavalry made such a business decision with regard to Plaintiff, retaining a law firm (Defendant Kramer) to file a State court action in an attempt to collect a debt against Plaintiff.

14. Defendant Kramer makes a business decision not to obtain a copy of the written contracts signed by consumers or other evidence of the alleged debt prior to filing State court collection lawsuits against consumers.

15. The Defendants have alleged in a prior State court lawsuit, that Plaintiff incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a credit card debt originally owed to, or serviced by, HSBC Bank Nevada N.A., or their assignees (hereinafter "HSBC").

16. According to Defendant Cavalry's paperwork filed with the State court, Plaintiff's alleged debts were consigned, sold or otherwise transferred to Defendant Cavalry for collection from Plaintiff.

17. When purchasing charged-off consumer debts, Defendant Cavalry makes an intentional business decision not to obtain knowledge as to whether a written contract existed between the original creditor of the debt and the consumer, or if there was other documentation showing when or how the debt was incurred, or anything beyond very rudimentary information which would allow them to properly calculate the amount of debt owed by a consumer at the time they file a collection lawsuit. The only documentation or information on the alleged account received by Defendant Cavalry is the consumer's name, last known address, telephone number, social security number, amount due, name of original creditor, original account number, and in some instances, alleged account statements dating back, typically two years or less, from the time the alleged account was charged off.

18. The lack of documentation that debt buyers such as the Defendant Cavalry receive when they purchased the debt is reflected in the price of the debt, sometimes a little as a few pennies on the dollar.

19. When Defendant Cavalry bought the debt they allege is owed by Plaintiff, they intentionally made a business decision not to receive any of the basic documents or evidence needed to demonstrate that the amount they claimed that were due from Plaintiff, as either principal or interest, was actually owed by him, and they did not possess any such documents as of the date they filed the State court action through its agent, Defendant Kramer.

20. Specifically, at the time Defendant Cavalry purchased Plaintiff's alleged Account, they did not receive any documents which (a) could be used as evidence to show, in a court of

law, that Plaintiff had entered into a contract with any entity creating the debt or opening an Account, (b) show how the amount claimed as due was calculated or what Plaintiff received in return for incurring the alleged debt, (c) show how the interest on the debt was to be calculated or how payments were to be applied to both principal and interest, and whether any payments had been properly applied pursuant to any agreement between the original creditors and Plaintiff, (d) show whether Defendants were entitled to sue in State court rather than arbitrate any alleged claims against Plaintiff, and if they did have the right to sue, whether Defendants were entitled to any amounts of prejudgment interest, and if so, at what rate and from what date, and (e) show when the alleged debt went into default and what acts by Plaintiff caused the default. Further, Defendants did not possess, and did not have access to, any such documents as of the date they filed the State court action.

21. When Defendant Cavalry purchased Plaintiff's alleged Account they did not receive any supporting documentation of the debt, including, but not limited to, (a) the alleged underlying Contracts between HSBC and Plaintiff; (b) anything bearing Plaintiff's signature binding her to any contractual obligation, (c) documentation showing how all charges to the alleged account were incurred by Plaintiff with regard to the amount being sued upon by Defendants, (d) monthly billing statements which encompass any charges that were incurred relating to the amount being sued upon, (e) a complete history of the payments made on the account to ensure proper accounting by the original creditor and any alleged assignees, (f) any documents showing how the amount of the alleged debt was calculated, or (g) any information showing how the interest and principal on the debt were calculated with regard to the alleged outstanding balance.

22. Instead, when Defendant Cavalry purchased the Account, all they received was the aforementioned limited information about Plaintiff and the alleged debt, which was transmitted electronically as part of a spreadsheet along with thousands of other charged-off accounts.

23. Prior to the Defendants filing the State court collection lawsuit against Plaintiff, they failed to obtain any supporting documentation of the debt, including, but not limited to, (a) the alleged underlying Contracts between HSBC and Plaintiff; (b) anything bearing Plaintiff's signature, (c) documentation regarding what Plaintiff purchased or when she made a purchase as it relates to the amount being sued upon, (d) a payment history relating to the period of time in which the alleged debt was incurred as it relates to the amount being sued upon, or (e) documents showing how the amount of the alleged debt was calculated.

24. Defendant Cavalry and Defendant Kramer have a "pattern and practice" of filing collection lawsuits against consumers in Virginia on debts (a) after making an intentional business decision not to obtain knowledge as to whether a written contract exists between the original creditor and the consumer or whether other documentation exists showing when or how the debt was incurred, (b) prior to making a reasonable and adequate investigation as to whether the consumer owes the amount of debt they are attempting to collect, and (c) by attaching affidavits from individuals whose knowledge of the specifics of the original debt is limited or non-existent. These Defendants do all of this with the intention of either obtaining a default judgment or coercing the consumer into a settlement.

25. Defendant Cavalry and Defendant Kramer file the collection lawsuits against Virginia consumers, and have filed such a collection lawsuit against Plaintiff, knowing they do not have the means, and do not intend to obtain the means, to prove the alleged debt.

26. Because debt buyers such as Defendant Cavalry and debt collection attorneys such as Defendant Kramer lack documentation necessary to establish a claim based on monies advanced or loaned, they often file collection lawsuits against Virginia consumers on a sworn account, and attempt to support the claim with a false, deceptive and misleading affidavit.

27. In a majority of the cases, debt buyers such as Defendant Cavalry obtain a default judgment and the sufficiency of the debt buyer's affidavit or their ability to prove the related account through admissible evidence is not challenged.

28. Debt buyers such as Defendant Cavalry, and Defendant Cavalry themselves, file hundreds of cases a month in jurisdictions throughout Virginia, including Plaintiff's jurisdiction, Washington County, Virginia. The Defendants do so with the hopes that either the consumer does not show up at all, or if they show up, they do not challenge the amount sued upon. In either instance, the Defendants will receive judgment based on the false and misleading affidavits filed with the State court.

29. In those few instances where the consumer has the wherewithal, means and ability to defend the collection lawsuit, debt buyers such as the Defendant Cavalry and debt collection attorneys such as Defendant Kramer usually will dismiss ("non-suit") the case rather than risk having its deceptive practices exposed.

30. After a reasonable opportunity for further investigation or discovery, Plaintiff believes there will be evidence to show that once a lawsuit is non-suited by Defendant Cavalry or its agents, Defendant Cavalry will often sell the account sued upon to another purchaser

of bad debt. The consumer would then be subject to collection efforts by a separate entity on the same alleged account that the Defendants have already sued upon.

31. Defendant Cavalry and Defendant Kramer also engage in a "pattern and practice" of allowing the State Court to schedule pleadings and a trial date; requiring the debtor to file a "Grounds Of Defense" or suffer summary judgment, and requiring the debtor, or his counsel, to appear at the trial date only for the Defendants to inform the State court that it has no witnesses present and is requesting a non-suit (dismissal without prejudice). On occasion, Defendant Kramer will request that the case be non-suited prior to the actual trial date.

32. After a reasonable opportunity for further investigation or discovery, Plaintiff believes there will be evidence to show that the Defendants request a non-suit in more than ninety-nine percent (99%) of the cases where a consumer challenges the validity of the debt and/or refuses to settle or make payment arrangements with the Defendants.

33. In some instances, debt buyers such as Defendant Cavalry, and Debt Collectors such as Defendant Kramer, knowing that they cannot prove the alleged account with the limited documentation they possess or have access to, will subpoena the consumer, who is the defendant in a lawsuit in which the debt buyer is plaintiff, in an attempt to prove its case through the very person they are suing. To be clear: After the consumer has already disputed the debt through pleadings, the Defendants will subpoena the consumer in an attempt to prove its case against the consumer. This is done because the Defendants are unable to gain default judgment against a consumer who appears in court and disputes the debt, and further because the Defendants have no ability to prove a prima facie case in a lawsuit that they have filed against the consumer

34. With regard to Plaintiff in particular, the Defendants engaged in this pattern of practice. To wit, on May 1, 2012, Defendant Cavalry and Defendant Kramer filed a civil lawsuit against Plaintiff in State court seeking judgment to collect money, plus cost, plus interest.

35. The Defendants filed the lawsuit based upon affidavits that give a false impression to the consumer, and to the State court, that Defendants have the ability to prove the alleged debt through admissible business records and competent testimony of one of many affiants employed by Defendant Cavalry, in this instance, Defendant Dardignac.

36. The Defendants filed the lawsuit despite the fact that they had no admissible evidence showing that Plaintiff owed the amount of debt they were alleging he owed, and did so prior to making a reasonable and adequate investigation as to whether Plaintiff actually owed the amount of debt they were alleging he owed.

37. The Defendants used false, deceptive, and misleading practices or means; and engaged in abusive and harassing practices or means, in connection with the civil lawsuit and in certain other actions by Defendants relating to the lawsuit. As a result of these practices, Defendants have violated numerous and multiple provisions of the FDCPA.

## MAY 1, 2012 COLLECTION LAWSUIT AND ASSOCIATED COMMUNICATIONS

38. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

39. Within one (1) year prior to the filing of this Complaint, on or about May 1, 2011, the Defendants, in The Washington County General District Court, Virginia, caused to be issued a Civil Warrant In Debt (see Attached Exhibit 1); the Defendants also filed a separate sworn Affidavit with the Warrant In Debt (see Attached Exhibit 2) and also filed a separate Statement of Account with the Warrant In Debt (see Attached Exhibit 3), which appears to be a computer generated statement containing information concerning a debt alleged to be owed by Plaintiff. The Affidavit is largely a regurgitation of the information contained in the "Statement," with additional boilerplate language alleging a debt incurred and a failure to repay that debt. In addition, the Defendants filed a purported "Assignment and Bill of Sale" (see Attached Exhibit 4) between HSBC and Defendant Cavalry. This document references an "Agreement" that has never been disclosed by Defendants.

40. The Warrant In Debt, Affidavit and Statement labeled as Exhibits 1, 2 and 3, will hereinafter be referred to collectively as "Collection Lawsuit."

## MAY 1, 2012 COLLECTION LAWSUIT

### Warrant In Debt Filed In Collection Lawsuit
### State Court Case Number GV12000894-00

41. The Warrant In Debt was filed and served on Plaintiff in connection with the collection of a debt and in an attempt to collect a debt, and is a "communication" as defined by 15 U.S.C. § 1692a(2).

42. The Warrant in Debt Claims that Plaintiff owes Defendant Cavalry Funding, LLC assignee of HSBC "a debt in the sum of $1,249.89 net of any credits, with interest at 6 %

from date of judgment until paid. $56.00 costs and $ .00 attorney's fees with the basis of this claim being . . . open account."

43. The Warrant In Debt has a signature that is illegible, Attorney, however, "DLA-S.J. Zecca" is typed as "Attorney for Plaintiff."

44. The Warrant In Debt, filed in conjunction with a false and misleading affidavit, and under circumstances where there are not adequate procedures in place to ensure the reliability of the amount or amounts being sued upon, constituted the use of a false, deceptive, and misleading representation or means in connection with the collection of a debt or attempt to collect a debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and was an unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f.

### Sworn Affidavit Filed With Collection Lawsuit

45. The sworn Affidavit was filed and served in connection with the collection of a debt and in an attempt to collect a debt, and is a "communication" as defined by 15 U.S.C. § 1692a(2).

46. The sworn Affidavit is reproduced verbatim below (also attached as Exhibit 2):

> STATE OF NEW YORK    )
> ) ss.
> COUNTY OF WESTCHESTER    )
> Re: Cavalry Portfolio Services, LLC as assignee of Cavalry SPV I, LLC, as assignee of HSBC Bank Nevada, N.A. \ Orchard Bank
> vs.
> CAROLYN STOOTS
>
> 1. Louis Dardignac, being duly sworn on oath, depose and say:
>
> 2. I am acting in the capacity of Legal Administrator for my employer Cavalry Portfolio Services, LLC, a Delaware limited liability company. Cavalry Portfolio Services, LLC performs recovery services for its affiliate, Cavalry SPV I, LLC. In performing recovery services for Cavalry SPV I, LLC, I am familiar with and have access to the books and records of Cavalry SPV I, LLC and of Cavalry Portfolio Services, LLC.

3. That the defendant, CAROLYN STOOTS, the account holder(s), opened an account with HSBC Bank Nevada, N.A. \ Orchard Bank on 2/21/2008, which account became delinquent and was charged off on 2/28/2011 (the "Account").

4. As of 1/24/2012, the balance due and owing by the account holder(s) on the account is $1,317.69, which balance is comprised of $1,249.89 of principal balance and $67.80+$0+$0 of other charges. The principal balance continues to accrue interest as of the 1/24/2012 at a rate of 6%. The account holder(s) have been credited for all payments, set-offs or other credit due.

5. That the Account was purchased by Cavalry SPV I, LLC on or about 3/18/11.

6. In the normal course of business, Cavalry Portfolio Services, LLC maintains computerized account records for account holders. Cavalry Portfolio Services, LLC maintains such records in the ordinary and routine course of business and is charged with the duty to accurately record any business act, condition or event onto the computer record maintained for the accounts, with the entries made at or very near the time of any such occurrence. I have reviewed the applicable computer record as it relates to the Account, and I make this Affidavit based upon information from that review, and if called as a witness, I could testify to the matters set forth herein based on that review.

7. In connection with the purchase of the account, HSBC Bank Nevada, N.A. \ Orchard Bank transferred copies of its electronic business records to Cavalry SPV I, LLC which records were loaded into the computer system of Cavalry Portfolio Service, LLC and which are maintained in an electronic format.

8. Upon information and belief, no Defendant is an infant or incompetent or a member of the United States Armed Forces who would be entitled to stay relief.

9. Under oath, I am authorized to make this affidavit for Plaintiff and I am informed and believe the statements are true and correct.

Subscribed and sworn to before me on 2/28/2012

/s/Louis Dardignac
Legal Administrator

/s/Christina Martinez
Notary Public, State of New York
{Stamped SEAL}

Kramer, Meggison and Taylor LLC
14582903

47. The Affidavit Sworn by Defendant Dardignac, filed in the Collection Lawsuit by Defendant Kramer, both as agents of Defendant Cavalry, was false, deceptive and misleading to the extent the affiant claims personal knowledge of the account information described in the affidavit and to the extent the affiant asserts that the records of the alleged debt were recorded by Cavalry or an agent thereof, at or close to the time that they events recorded occurred.

48. Taken as a whole, even the most sophisticated consumer would think that the Affiant, Defendant Dardignac, or some agent or employee of Defendant Cavalry, had personal knowledge of events that occurred prior to Defendant Cavalry acquiring the Account.

49. Defendants did not in fact have admissible documentation and had no ability to acquire admissible documentation in order to prove that the amount sued upon in State Court was properly owed by Plaintiff.

50. Contrary to the assertions by Defendant Dardignac contained within the affidavit, Defendant Dardignac did not have the ability to testify to all of the matters set forth in the affidavit if called to testify. Defendant Dardignac is not able to lay the proper foundation to admit the business records of HSBC or to admit those records as integrated business records of Defendant Cavalry. Defendant Cavalry and Defendant Kramer knew or had reason to know that Defendant Dardignac's statements were false and misleading. Further, Defendant Cavalry and Defendant Kramer knew that Defendant Dardignac never intended to testify because those Defendants never intended to call Defendant Dardignac to the stand.

51. Defendant Cavalry purchases electronic business records of old accounts for pennies on the dollar. Defendant Dardignac reviews these electronic records and swears out an Affidavit alleging personal knowledge of Plaintiff's Account, and the ability to testify competently about such account, based on a cursory review of the purchased electronic records. The Affidavit used to prosecute the Collection Lawsuit was made by Defendant Dardignac by reproducing the information contained in the electronic record in a purely mechanical way, with no evidence of personal thought or understanding.

52. Defendant Dardignac produced the Affidavit without any review of any supporting documentation created during the relationship between the original creditor and Plaintiff. As Legal Administrator for Defendant Cavalry, Defendant Dardignac simply did not have access to sufficient records to ensure the reliability or accuracy of the account sued upon.

53. The only records held by Defendant Cavalry at the time Defendant Dardignac signed the sworn Affidavit were computer records, which contained very limited information about Plaintiff and his alleged debt.

54. The only records that Defendant Dardignac was able to review prior to signing the sworn Affidavit were the limited computer records obtained by Defendant Cavalry from HSBC.

55. However, the Affidavit creates a false impression that Defendant Dardignac could testify competently, and properly introduce business records, concerning the alleged debt being sued upon. It creates the impression that they have the ability to admit evidence concerning all the assertions contained in the affidavit. This would include information that Plaintiff opened an account with HSBC and that the balance sued upon was properly due and owing to Defendant Cavalry.

56. Defendant Dardignac claims in the Affidavit that he has the ability to testify competently, based on a review of business records that he alleges were kept in the ordinary course of business and that such records were created with entries that were made at or very near the time of any such occurrence. The Affidavit alleges that Defendant Cavalry is charged with the duty to accurately record any business act, condition or event. However, at the end of the affidavit, Defendant Dardignac alleges that he is "informed and believe[s]" that all the statements in the affidavit are true and correct.

57. Within the Affidavit, Defendants intentionally do not refer to whose business records Defendant Dardignac is referring to. This is an attempt to mask the fact that HSBC is quite removed from the process of suing upon the accounts. It is also an attempt to mask the fact that Defendants are quite removed from the processes employed by the HSBC in maintaining its purported account records. Upon information and belief, the alleged accounts purchased by Defendant Cavalry were sold to Cavalry without warranty or recourse against HSBC. This means that Defendant Cavalry bought the alleged accounts "as is" without any assurances that the amounts were properly due and owing or even collectible.

58. The affidavit gives the false impression that Defendant Dardignac has personal knowledge of the account sued upon but in the same breath admits that the Affidavit is

produced upon Defendant Dardignac's information and belief. Further, the business records that Defendant Cavalry must rely on to prove a valid obligation between HSBC and Plaintiff are business records created by HSBC. It would be impossible for any employee at Cavalry to have entered business events that occurred while the account was in control of HSBC. Yet the Affidavit is parsed in such a way to give the false impression that Defendant Dardignac has the ability to lay a proper evidentiary foundation to testify competently to all matters stated therein. No such ability exists or existed at the time Defendant Dardignac signed the affidavit.

59. Without any records of the originator of the debt available for his review to determine if there was a contract signed by Plaintiff and, if so, whether the amount of the debt as to principal or interest he alleged was owed by Plaintiff in the Affidavit was correct as required under penalty of perjury, it was impossible for Defendant Dardignac to truthfully make a sworn affidavit as to the correctness of the amount owed, if any, by Plaintiff.

60. Proceeding on this false, misleading and deceptive affidavit, Defendants filed a lawsuit knowing they had no ability to prove the allegations which formed the basis of the Collection Lawsuit. The Affidavit alleges facts in which none of the Defendants have personal knowledge, despite their assertion that the Custodian of Records is competent to testify to the matters stated in the Affidavit. This assertion of competency, combined with the allegations contained in the Affidavit would create a false impression in the mind of the least sophisticated consumer that Defendants had the legal right and the legal ability to collect the debt in the manner and in the amount in which they attempted to collect it. U.S. v. National Financial Services, Inc., 98 F.3d 131, 136 (4th Cir. 1996) ("[E]valuating debt collection practices with an eye to the 'least sophisticated consumer' comports with basic consumer-protection principles: 'The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law.'" (quoting Clomon v. Jackson, 988 F.2d 1314, 1318 (2nd Cir. 1993)).

61. The sworn Affidavit claiming testimonial competence implied that Defendant Dardignac had personal knowledge of Plaintiff's Account. In fact, Defendant Dardignac was not competent to testify, and had no personal knowledge of the account. The Affidavit was an attempt to mislead the State court and Plaintiff into believing that Defendant Dardignac was someone who had personal knowledge of the amount of debt allegedly owed by Plaintiff and that Plaintiff in fact owed the debt, when it was not possible for Defendant Dardignac to have such personal knowledge.

62. Further, it was an attempt to mislead the State court and Plaintiff into believing that Defendant Dardignac had an ability to testify to admissible evidence concerning the debt and that this evidence would be admitted under the "Business Records" exception to the rule against the introduction of hearsay evidence. This evidence would not have been admissible because the foundational requirements of personal knowledge and entry of the record at or near the time of the record's creation did not in fact exist, contrary to the assertions by Defendant Dardignac in the sworn Affidavit.

63. The only records held by Defendant Cavalry at the time Defendant Dardignac signed the sworn Affidavit were computer records, which contained very limited information about Plaintiff and her alleged debt. These computer records are not competent evidence simply because the Defendants wish them to be. The Defendants cannot give adequate assurance that the records of the alleged account have the guarantees of trustworthiness and reliability that forms the basis of the business records exception.

64. In addition, the Defendants cannot show that they independently verified the accuracy of the account sued upon to permit the Defendants to rely upon the integration of HSBC's business records into Defendant Portfolio's business records. The Defendants simply did not have access to enough information about the alleged account to do so.

65. Even assuming that the records could be introduced as competent evidence, Defendants still cannot prove that Plaintiff is liable for the alleged account. No contract or other writing signed by Plaintiff has been produced by the Defendants at any time prior to, during, or subsequent to the State court lawsuit.

66. Defendant Cavalry, Defendant Dardignac, and Defendant Kramer intentionally made a business decision to file the Collection Lawsuit without (a) obtaining knowledge as to whether a written contract existed between HSBC and Plaintiff or if there was other documentation showing when or how the debt was incurred, and (b) making a reasonable and adequate investigation as to whether Plaintiff owed the amount of debt they were attempting to collect, but to rely solely on other parties for this information.

67. The Defendants' business decision to rely entirely on HSBC or an assignee of Cavalry Portfolio Services, LLC or an assignee of Cavalry SPV I, LLC as to the amount of debt allegedly owed by Plaintiff without (a) obtaining knowledge as to whether a written contract existed between Cavalry and Plaintiff or if there was other documentation showing when or how the debt was incurred, and (b) making a reasonable and adequate investigation as to whether Plaintiff owed the amount of debt they were attempting to collect, was not a procedure reasonably adapted to avoid using a deceptive or misleading representation or means in connection with collection of the debt.

68. By making a business decision to intentionally not (a) obtain knowledge as to whether a written contract existed between Cavalry and Plaintiff or if there was other documentation showing when or how the debt was incurred, and (b) make a reasonable and adequate investigation as to whether Plaintiff owed the amount of debt they were attempting to collect, prior to filing a collection lawsuit, the Defendants intentionally used a deceptive and misleading representation in connection with collection of the debt as to the amount allegedly owed by Plaintiff in violation of 15 U.S.C. §1692e and 1692(e)10 and is an unfair or unconscionable means to collect or attempt to collect the debt in violation of 15 U.S.C. § 1692f.

69. The Affidavit filed in connection with the Collection Lawsuit alleged information that the Defendants knew or should have known was not true and therefore was the use of a false, deceptive, and misleading representation or means in connection with collection of the debt to collect or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and is an unfair or unconscionable means to collect or attempt to collect the debt in violation of 15 U.S.C. § 1692f.

### Defense and Outcome of Collection Lawsuit

70. Plaintiff retained counsel to defend against the Collection Lawsuit. Counsel for Plaintiff appeared to dispute the Collection Lawsuit on June 25, 2012 in Washington County General District Court. The Court ordered Defendant Kramer to file a Bill of Particulars which was timely filed with the court on or about June 29, 2012. The Court further ordered a Grounds of Defense which, after Plaintiff retained counsel, was timely filed with the court on or about August 17, 2012. The case was set for trial on August 27, 2012.

71. When the trial date arrived, Defendants, knowing they did not have the means and ability to prove its lawsuit through admissible evidence, requested that the case be non-suited.

72. After a reasonable opportunity for further investigation or discovery, Plaintiff believes there will be evidence to show that the HSBC account, after the lawsuit based upon that account was non-suited by Defendant Cavalry through its agent Defendant Kramer, has been sold or will be sold to a different buyer of bad debt.

73. By filing a lawsuit without evidence to prove such lawsuit, and without the intention of proving the lawsuit, and then selling or seeking to sell the account sued upon after

voluntarily dismissing such lawsuit, Defendants used an unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f.

74. The above-detailed conduct by Defendants in connection with collection of the debt and in an attempt to collect the debt was conduct in violation of numerous and multiple provisions of the FDCPA including, but not limited to the above-cited provisions of the FDCPA.

75. Plaintiff is informed and believes and, therefore, alleges that Defendants knowingly and intentionally engaged in harassing, abusive, false, misleading, unfair, deceptive, unconscionable and illegal debt collection practices.

76. The Defendants failed to maintain (i.e., actually employ or implement) procedures to avoid making errors and violating the FDCPA prior to, or during, the collection of the alleged debt against Plaintiff.

### DAMAGES

77. By filing the Collection Lawsuit based on a false and misleading affidavit in violation of the FDCPA, the Defendants caused Plaintiff to be served with a lawsuit by a sheriff's deputy in a small community.

78. Plaintiff has suffered actual damages as a result of these illegal communications, lawsuits and collection attempts by Defendants in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, and embarrassment, amongst other emotions. Plaintiff has suffered from severe emotional distress as a result of the illegal collection activities of Defendants. This emotional distress has caused or contributed to problems with Plaintiff's physical and mental well-being and has caused Plaintiff to seek medical and mental health treatment and medication and has incurred expenses as a result.

### RESPONDEAT SUPERIOR LIABILITY

79. In addition to their individual liability under the FDCPA, the acts and omissions of Defendant Kramer and its agents, and Defendant Dardignac, all as agents for Defendant Cavalry, and who communicated with Plaintiff as described herein, were committed within the time and space limits of their agency relationship with their principals, Defendant Cavalry.

80. The acts and omissions by Defendant Kramer and its agents, and Defendant Dardignac were incidental to, or of the same general nature as, the responsibilities they were authorized to perform by Defendant Cavalry in collecting consumer debts.

81. By committing these acts and omissions against Plaintiff, Defendant Kramer and its agents, and Defendant Dardignac were motivated to benefit their principals, Defendant Cavalry.

82. Defendant Cavalry is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors and omissions done in violation of federal law by the debt collectors employed as agents by Defendant Cavalry including, but not limited to the above cited violations of the FDCPA, in their attempts to collect the debt from Plaintiff.

## DEMAND FOR TRIAL BY JURY

83. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable. US Const. amend. 7. Fed.R.Civ.P. 38.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. §§ 1692 et seq.

84. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

85. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the FDCPA including, but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §§ 1692 et seq., with respect to Plaintiff.

86. As a result of Defendants' multiple violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), in an amount to be determined at trial by a jury; statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against each and every Defendant:

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. §§ 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiff, in an amount to be determined at trial by a jury;
- for an award of statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A) in the amount of $1,000.00 against each and every Defendant, and for Plaintiff;
- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff; and
- for such other and further relief as may be just and proper.

Respectfully submitted,

CAROLYN STOOTS

/s/Brandon Snodgrass, Esq.
Virginia State Bar ID # 47894
Attorney for Plaintiff
P. O. Box 1417
Abingdon, VA 24212
(276) 676-2660
bsnodgrass@snodgrasslawfirm.com

/s/Matthew L. Felty, Esq.
Virginia State Bar ID # 74873
Attorney for Plaintiff
P. O. Box 1417
Abingdon, VA 24212
(276) 676-2660
mfelty@snodgrasslawfirm.com